UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI ANN MARLETTE-McGREW,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>　　　　　　　Defendant. | Case No. SACV 14-1711-JPR<br><br>**MEMORANDUM OPINION AND ORDER<br>REVERSING COMMISSIONER** |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed September 21, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further administrative proceedings.

**II.   BACKGROUND**

Plaintiff was born in 1958. (Administrative Record ("AR") 210.) She obtained a GED and worked as a sales service associate, office clerk, receptionist, and mail carrier. (AR 52-53, 234, 237.)

On February 23, 2012, Plaintiff filed an application for DIB (AR 210), alleging that she had been unable to work since March 24, 2009, because of migraines, irritable bowel syndrome ("IBS"), and depression (AR 233). After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 160.) Plaintiff completed disability reports on appeal, indicating that she also suffered from osteoarthritis and had received treatment for several other conditions, including fibromyalgia, seizures, anxiety, high blood pressure, sleep difficulties, panic attacks, and a right-knee problem. (AR 297-98, 300-01, 304-07.) A hearing was held on March 25, 2014, at which Plaintiff, who was represented by counsel, testified, as did a medical expert and a vocational expert ("VE"). (AR 38-66.) In a written decision issued April 17, 2014, the ALJ found Plaintiff not disabled. (AR 19-30.) On August 22, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra

1  v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial
2  evidence means such evidence as a reasonable person might accept
3  as adequate to support a conclusion.  Richardson, 402 U.S. at
4  401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).
5  It is more than a scintilla but less than a preponderance.
6  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
7  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
8  substantial evidence supports a finding, the reviewing court
9  "must review the administrative record as a whole, weighing both
10 the evidence that supports and the evidence that detracts from
11 the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,
12 720 (9th Cir. 1996).  "If the evidence can reasonably support
13 either affirming or reversing," the reviewing court "may not
14 substitute its judgment" for the Commissioner's.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

   A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently

engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

      B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2009, the alleged onset date. (AR 21.) At step two, she concluded that Plaintiff had the severe impairments of "status post bilateral carpal tunnel syndrome, morbid obesity, migraines, Valium withdrawal, hypertension, fibromyalgia, left frontal encephalopathy malacia, a few small old lacunar infarcts in the cerebellum, cervical degenerative disc disease, status post right medial meniscus tear, major depressive disorder, and generalized anxiety disorder." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any impairment in the Listing. (AR 22.) At step four, she found that Plaintiff had the RFC to perform light work with additional restrictions. (AR 24.) Specifically, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours in an eight-hour workday with normal breaks, sit for six hours in an eight-hour workday, occasionally use her lower right extremity for foot pedals, and occasionally climb stairs, bend, balance, kneel, and crouch, but she could not perform above-the-shoulder work with either upper extremity, work at unprotected

heights, stoop, crawl, or climb ladders, ropes, or scaffolds. (Id.)  The ALJ further found that Plaintiff could perform moderately complex tasks with a specific-vocational-preparation ("SVP") level of 3 to 4 if they involved no hypervigilance, but she should not be in charge of safety operations for others and could not "be subjected to intrusive supervision or intense personal interactions such as taking complaints or the encounters similar to those experienced by law enforcement or emergency personnel." (Id.)  Based on Plaintiff's RFC and the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist. (AR 28.)  At step five, the ALJ further found that Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 29.) Accordingly, the ALJ found Plaintiff not disabled through her date last insured, March 31, 2013.  (Id.)

**V.   DISCUSSION**

Plaintiff contends that the ALJ erred in (1) assessing her physical RFC, (2) assessing her mental RFC, and (3) rejecting her credibility. (J. Stip. at 3-4.)  Because the ALJ failed to provide specific and legitimate reasons for discounting medical-opinion evidence regarding Plaintiff's physical RFC, remand is warranted.

    A.   The ALJ Erred in Assessing Plaintiff's Physical RFC

Plaintiff contends that the ALJ's physical RFC assessment was not supported by substantial evidence because the ALJ failed to set forth legally sufficient reasons for rejecting the opinions of Plaintiff's treating doctors, Daniel Kim and Gerald Ho.  (J. Stip. at 6-9, 19-20.)

1. Applicable law

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and "explain in [her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 404.1527(e)(2)(ii); see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record"). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC those findings from treating-physician opinions that were "permissibly discounted").

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining

7

physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. <u>Id.</u>

When a treating or examining doctor's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830–31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u>

### 2. <u>Relevant background</u>

#### a. *Treating physician Daniel Kim*

On March 11, 2014, Dr. Kim completed a "Physical Residual Functional Capacity Questionnaire." (AR 1108-12.) He diagnosed Plaintiff with fibromyalgia and seizure disorder "per patient report" and identified depression, anxiety, and "PTSD" as psychological conditions affecting Plaintiff's physical conditions. (AR 1108-09.) He reported that Plaintiff's symptoms included fatigue and pain in her joints, upper arms, knees, and neck. (AR 1108.) He opined that Plaintiff could lift less than 10 pounds, sit continuously for 15 minutes at a time, stand continuously for five minutes at a time, and sit, stand, and walk less than two hours in an eight-hour day. (AR 1110-11.) He also found that Plaintiff would need to walk one minute every 15 minutes, shift at will between sitting, standing, and walking, take unscheduled breaks, and use a cane. (<u>Id.</u>) Plaintiff could use her hands, fingers, or arms for repetitive activities only five percent of the time and bend and twist at the waist five percent of the time. (<u>Id.</u>) Dr. Kim opined that Plaintiff would

miss work more than three times a month due to her impairments or treatment. (AR 1109-10, 1112.) He stated that the asserted "symptoms and limitations" had existed since 2009. (AR 1112.)

On March 12, 2012, Dr. Kim completed a "Medical Source Statement - Physical" form. (AR 660-61.) Dr. Kim indicated that Plaintiff could lift and/or carry less than 10 pounds, stand and/or walk less than two hours in an eight-hour workday, and sit three hours in an eight-hour workday. (AR 660.) Dr. Kim cited fibromyalgia and leg pains to support these findings. (Id.) He opined that Plaintiff could occasionally stoop, reach, handle, finger, and feel but could never climb, balance, kneel, crouch or crawl. (AR 661.) He also noted environmental restrictions. (Id.)

    b. *Treating rheumatologist Gerald Ho*

On March 13, 2014, Dr. Ho completed a "Physical Residual Functional Capacity Questionnaire." (AR 1113-17.) He diagnosed Plaintiff with fibromyalgia and osteoarthritis of the neck and back and identified depression and anxiety as psychological conditions affecting Plaintiff's physical conditions. (AR 1113-14.) He indicated that Plaintiff's symptoms included insomnia, widespread myalgias, fatigue, dizziness, anxiety, stiffness, nonrestorative sleep, headaches, fibromyalgia fog, and IBS. (AR 1113, 1117.) He also noted that Plaintiff's fibromyalgia medication may cause seizures. (AR 1117.) Dr. Ho opined that Plaintiff could lift less than 10 pounds, sit continuously for five minutes at a time, stand continuously for five minutes at a time, and sit, stand, and walk less than two hours in an eight-hour day. (AR 1110-11.) He found that Plaintiff could use her

hands, fingers, or arms for repetitive activities five percent of the time and bend and twist at the waist one percent of the time. (Id.) Plaintiff would also need to walk one minute every 10 minutes, shift at will between sitting, standing and walking, take unscheduled breaks, use a cane, and avoid heavy machinery, climbing, extreme temperatures, and noisy places. (AR 1110-11, 1115-17.) Dr. Ho opined that Plaintiff would miss work more than three times a month due to her impairments or treatment. (AR 1114-15, 1117.) He stated that these limitations had existed since November 3, 2011. (AR 1117.)

On March 12, 2012, Dr. Ho completed a "Medical Source Statement - Physical." (AR 663-64.) He indicated that Plaintiff could lift and/or carry less than 10 pounds, stand and/or walk less than two hours in an eight-hour workday, and sit for two to three hours in an eight-hour workday. (AR 663.) He cited fibromyalgia, pain, fatigue, insomnia, IBS, weakness, obesity, and general stiffness to support these findings. (Id.) Dr. Ho opined that Plaintiff could occasionally stoop, reach, handle, finger, and feel but could never climb, balance, kneel, crouch, or crawl. (AR 664.) He also noted environmental restrictions. (Id.) Dr. Ho cited x-rays of Plaintiff's feet, clinical observations of tender points, and sedation caused by medication to support his findings. (Id.)

### 3. Analysis

The ALJ gave "limited weight" to Dr. Kim's and Dr. Ho's opinions. (AR 26.) The ALJ stated:

> Daniel J. Kim, M.D., a treating physician, completed two
> medical source statements. The doctor opined that the

    claimant can perform less than sedentary work with a sit or stand option and extreme exertional, postural, manipulative, and environmental limitations. In addition, Gerald Ho, M.D., also a treating physician, opined similar results in multiple medical source statements. The opinions of the doctors are given limited weight because the medical evidence of record does not support them and they are inconsistent with the claimant's activities of daily living.

(AR 26 (citations omitted).)

    The ALJ's conclusory reasoning does not provide a legally sufficient basis for rejecting these treating-physician opinions. See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion"); Kinzer v. Colvin, 567 F. App'x 529, 530 (9th Cir. 2014) (ALJ's statements that treating physicians' opinions contrasted "sharply with the other evidence of record" and were "not well supported by the . . . other objective findings in the case record" were not sufficiently specific and legitimate).

    In her summary of the medical evidence, the ALJ noted that Plaintiff's physical examinations were "relatively within normal limits" and that Plaintiff had a normal gait, good sensation, full muscle strength, and slightly decreased range of motion in some joints. (AR 25.) However, there are no laboratory tests or

objective findings that confirm the presence or severity of fibromyalgia. Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). Indeed, "[o]ne of the most striking aspects of this disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting); see also Cota v. Comm'r of Soc. Sec., No. 1:08-CV-00842-SMS, 2009 WL 900315, at *9 (E.D. Cal. Mar. 31, 2009) ("Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory functions, or reflexes."). In such cases, a treating doctor's diagnosis may be based purely on a patient's reports of pain and other symptoms. Benecke, 379 F.3d at 590. The Commissioner does not dispute that Plaintiff has fibromyalgia. (J. Stip. at 15.) The medical records also show Plaintiff's complaints of generalized muscle pain, tender points, fatigue, and sleep problems, all of which are indicative of fibromyalgia. Benecke, 379 F.3d at 590 (explaining that common symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease"); (see AR 741, 798, 800, 804, 812, 815, 848, 864, 866, 889, 892, 894, 905-07, 914, 961). Thus, the lack of abnormal objective findings on examination was not a sufficient basis for rejecting Dr. Kim's and Dr. Ho's opinions regarding the severity of Plaintiff's fibromyalgia. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ erred by relying upon "his

own exploration and assessment" of plaintiff's medical condition rather than medical evidence in the record).

Further, as discussed by the ALJ, there was objective medical evidence supporting Dr. Kim's and Dr. Ho's opinions regarding Plaintiff's other physical impairments. (AR 25.) X-rays and imaging studies showed osteoarthritis in Plaintiff's hands and feet, tendinosis of the common extensor tendon in her right elbow, spondylosis with moderate neural foraminal narrowing and mild stenosis in her cervical spine, and abnormalities in her knees. (AR 25, 46, 718-20, 724, 800, 810, 870, 906, 914, 1145, 1183.) Plaintiff was also "status post bilateral carpal tunnel surgery," and the medical record documented restrictions in her ability to lift, sit, stand, and walk. (AR 25, 46, 406, 741, 798, 800, 894, 907.) Consequently, it was improper for the ALJ to reject Dr. Kim's and Dr. Ho's opinions based on a lack of objective medical evidence.

The ALJ also erred in discounting their opinions as inconsistent with Plaintiff's activities of daily living. (AR 22, 24, 26, 27.) In a function report she filled out in March 2012, Plaintiff stated that she could not stand, walk, or sit more than 10 minutes, could not squat, and had difficulty bending, reaching, kneeling, climbing stairs, and using her hands. (AR 274.) Her activities included taking care of her personal needs, talking on the telephone, watching television, reading, working on crossword puzzles, preparing simple meals, and feeding her landlady's cat. (AR 269-71). She could use public transportation and go shopping for a few items on her own but needed assistance for bigger shopping trips. (AR 272.) She

1  could perform light household chores, such as washing dishes for
2  three to five minutes a day and sweeping and dusting for three
3  minutes every two or three weeks, but needed help with laundry
4  and heavier household cleaning.  (AR 271-72.)  The ALJ cited only
5  this function report and Plaintiff's hearing testimony (AR 22,
6  24, 26, 27), in which Plaintiff did not really discuss her
7  activities, failing to consider the second disability report
8  Plaintiff filled out, in March 2013, in which she described much
9  more limited activities and greater restrictions as the result of
10 increased fibromyalgia pain and a slip-and-fall accident (AR 304-
11 05).  In any event, the ALJ failed to adequately explain how
12 Plaintiff's activities of daily living conflicted with Dr. Kim's
13 or Dr. Ho's opinions regarding her functional limitations, and "a
14 holistic review of the record" does not reveal any such
15 inconsistencies.  Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir.
16 2014).

17     The Commissioner argues that the ALJ's physical RFC
18 assessment for a range of light work was supported by the
19 opinions of the testifying medical expert, Dr. Arnold Ostrow, and
20 the state-agency medical consultant, Dr. H. Han.  (J. Stip. 11-
21 14; AR 26.)  "[T]he findings of a nontreating, nonexamining
22 physician can amount to substantial evidence, so long as other
23 evidence in the record supports those findings." Saelee v.
24 Chater, 94 F.3d 520, 522 (9th Cir. 1996).  Further, greater
25 weight may be given to a nonexamining doctor who is subject to
26 cross-examination.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th
27 Cir. 1995).  But the opinion of a nonexamining physician standing
28 alone cannot constitute substantial evidence to support an ALJ's

rejection of a treating physician's opinion. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); Lester, 81 F.3d at 831-32. A contrary medical opinion may constitute substantial evidence upon which the ALJ may rely in evaluating the weight to afford a treating physician's opinion only when the contrary opinion is based on independent clinical findings. Andrews, 53 F.3d at 1041; see also Saelee, 94 F.3d at 522 (upholding ALJ's reliance on nonexamining medical consultant's opinion that was "corroborated by the opinions of other examining and consulting physicians, which in turn were based on independent clinical findings"); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony").

 Here, the nonexamining-physician assessments of Plaintiff's physical RFC were not supported by independent clinical findings of another treating physician or consultative examiner. Although Dr. Ostrow reviewed the medical record and was subject to cross-examination, his testimony was based on the same clinical findings in Plaintiff's treatment history upon which Dr. Kim and Dr. Ho based their opinions. (AR 45-51.) Dr. Han also relied on Plaintiff's treatment history but necessarily failed to consider substantial portions of the medical record, as his opinion was issued on April 2, 2012. (AR 83, 97.) As there is no examining opinion or other independent medical opinion evidence in the record consistent with the nonexamining physicians' assessments of Plaintiff's physical RFC, their opinions did not constitute

substantial evidence justifying rejection of Dr. Kim's and Dr. Ho's treating-physician opinions. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (ALJ improperly rejected treating physician's opinion based on opinion of nontreating physician when "the findings of the non-treating physician were the same as those of the treating physician" and only his conclusions differed (emphasis omitted)).

In sum, because the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Dr. Kim and Dr. Ho in assessing Plaintiff's physical RFC, reversal is warranted. On remand, the ALJ should specify the bases upon which she has weighed the medical-opinion evidence. As reconsideration of these medical opinions requires that the ALJ reevaluate Plaintiff's mental impairments[2] and credibility, the Court does not reach the remaining issues raised in the Joint Stipulation.

B.  Remand for Further Proceedings Is Appropriate

When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175–78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit as true" rule to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings

---

[2] Both Dr. Kim and Dr. Ho opined that psychological factors affected Plaintiff's physical condition and that Plaintiff has significant limitations in handling work stress and maintaining attention and concentration. (AR 1109-10, 1112-15.)

turns upon the likely utility of such proceedings"); Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Under the credit-as-true framework, three circumstances must be present before the Court may remand to the ALJ with instructions to award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. When, however, the ALJ's findings are so "insufficient" that the Court cannot determine whether the rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021.

Here, under Connett, remand for further proceedings is appropriate because the ALJ failed to provide specific and legitimate reasons for discounting the medical-opinion evidence in assessing Plaintiff's physical RFC, yet the Court has serious

doubts as to whether she is in fact disabled.[3]

## VI. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 25, 2016        _____
                                JEAN ROSENBLUTH
                                U.S. Magistrate Judge

---

[3] These doubts spring from inconsistencies in the record suggesting that Plaintiff may not be credible. For example, Plaintiff appears to have made conflicting statements concerning memory problems. (See AR 270-71, 273-74, 276, 304, 731, 1151.) Plaintiff also reported that she stopped driving because she was experiencing seizures but admitted at the hearing that she had driven a couple of weeks earlier. (See AR 44, 272, 731.) And although Plaintiff claimed to suffer from debilitating migraines, the medical record suggests that medication helped to alleviate this problem. (See AR 233, 270, 276, 1151, 1117.) Because the record as a whole creates serious doubt as to whether Plaintiff is in fact disabled, remand for further proceedings is appropriate. See Burrell v. Colvin, 775 F.3d 1133, 1141-42 (9th Cir. 2014).

[4] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."